UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -v-                CASE NO: 5:23-CR-0456
                        **DEFENSE SENTENCING MEMORANDUM**

STEVEN VALDER,

                Defendant.

## I.  PRELIMINARY STATEMENT

On June 27, 2024, Steven Valder ("Steven") was found guilty after a jury trial of two counts of sexual exploitation of a minor (18 U.S.C. § 2251(a)), one count of commission of a felony offense involving a minor by a registered sex offender (18 U.S.C. § 2260A), and one count of receipt of child pornography (18 U.S.C. § 2252A(a)(2)(A)). Sentencing is scheduled for October 24, 2024. The United States Probation Department prepared a Presentence Investigation Report (*hereinafter* "PSR") on September 17, 2024, in anticipation of sentencing. (Dkt. No. 82.) The PSR sets forth a total offense level of 43, a Criminal History Category of V, and a Guideline sentence of life. *Id*. ¶¶ 93, 102, 128. The PSR and the government assert that there is a mandatory life sentence in this case.  *See, e.g.*, *id*. ¶ 127. As discussed below, that assertion is not supported by Second Circuit precedent. Rather, the mandatory minimum in this case is thirty-five years.[1] The defense respectfully submits this memorandum in support of a sentence of thirty-five years' imprisonment.

## II.  FACTUAL AND PROCEDURAL HISTORY

Steven was born in Syracuse in 1990. (Dkt. No. 82 ¶ 106.) Steven's parents separated when Steven was about four years old. *Id*. Steven and his sisters continued to see their father

---

[1] Twenty-five years for Counts One and Two plus a mandatory consecutive ten-year term for Count Three.

every other weekend after the separation. *Id*. ¶ 109. Steven's father sexually abused both of Steven's sisters frequently over an extended period of time. *Id*. Steven's father also sexually abused him, although Steven is not able to recall exactly when the abuse occurred or how long it went on. *Id*. A friend of Steven's father also sexually abused Steven when Steven was about fourteen years old. *Id*.

In 2005, Steven's older sister reported that her father was sexually abusing her, Steven and their sister. (Dkt. No. 82 ¶ 110.) Steven's father served five years in prison for abusing Steven and his siblings. *Id*. ¶ 111. He served additional time because of parole violations. *Id*. It was learned that, in addition to Steven and his siblings, Steven's father abused other non-familial minors. *Id*.

Steven struggled with mental health issues throughout his childhood (beginning at about the age of five, which is likely when his father began abusing him) and teenage years. (Dkt. No. 82 ¶¶ 110, 114-16.) He was diagnosed with ADHD and depression, placed on medication and attended counseling (Dkt. No. 82 ¶ 11.). He was in special education classes throughout his schooling. *Id*. ¶ 123. His mental health treatment was effective enough that he was able to get through his final year in school with few problems. *Id*. ¶ 116. In 2008, he completed the twelfth grade one credit shy of getting his diploma. *Id*. ¶ 123. He later earned his GED. *Id.*

In November 2008, an undercover law enforcement officer encountered Steven in an online chatroom. (Dkt. No. 82 ¶ 98.) During these online chats, Steven shared images of child erotica and pornography with the officer. *Id*. At about the same time, the Cayuga County Sheriff's Office began investigating a report that Steven had sexually abused his stepsiblings and another relative. *Id*. ¶ 97. In January 2009, the Cayuga County Sheriff's Department interviewed Steven about the sexual abuse and the online chats. *Id*. ¶¶ 97-98. Steven admitted sexually abusing the minors. *Id*. ¶ 97.  He admitted that he had possessed and traded child pornography

and engaged in online chats involving child pornography. *Id*. ¶ 98. He consented to law enforcement seizing his computer. *Id*. In the presence of law enforcement, he accessed his collection of child pornography and burned it onto discs for the investigators. *Id*. Following the interview, Steven was arrested and detained on state sexual abuse charges. *Id*. ¶ 97. He was ultimately sentenced to ten years in prison on the state sexual abuse charges and fifteen years on the federal child pornography charges. *Id*. ¶¶ 97-98. While in state prison he completed Aggression Replacement Therapy and sex offender treatment. *Id*. ¶ 117.

Steven got out of federal prison in April of 2021 and moved into the Syracuse Pavilion Residential Re-Entry Center. (Dkt. No. 82 ¶ 108.) He was able to get his own apartment in October of 2021 and lived there until his re-arrest in May of 2023. *Id*. He attended individual and group sex offender treatment at NuStep Professional Counseling in Syracuse from June of 2021 until his re-arrest. *Id*. ¶ 118. Steven maintained employment, most recently working full time at the Hoffman Sausage Company from April of 2022 until his May 2023 re-arrest. *Id*. ¶ 125.

On May 17, 2023, federal probation officers found Steven in possession of an unauthorized smart phone. (Dkt. No. 82 ¶ 16.) On June 1, 2023, Steven was arrested for violating the conditions of his federal supervised release.[2] *Id*. ¶ 18. When law enforcement forensically examined the phone, they found images of child pornography. *Id*. ¶ 20. Two minor victims were located, who identified Steven as having sexually abused them. *Id*. ¶¶ 21-45[3]. On November 15, 2023, Steven was indicted. (Dkt. No. 1.) The case proceeded to trial and Steven was found guilty.

---

[2] The supervised release violation petition remains pending in Case No. 5:09-cr-00260-MAD. It will be addressed during the sentencing hearing on October 24, 2024.

[3] At trial there was no evidence presented that the second victim was sexually abused as this alleged victim did not testify.

## III.    THE COURT IS NOT REQUIRED TO IMPOSE A LIFE SENTENCE.[4]

The PSR asserts that there is a mandatory life sentence in this case pursuant to 18 U.S.C. § 3559(e). (Dkt. No. 82 at 1, ¶ 127, ¶ 147, ¶ 148.) Section 3559(e) states that "[a] person who is convicted of a Federal sex offense in which a minor is the victim shall be sentenced to life imprisonment if the person has a prior sex conviction in which a minor was the victim, unless the sentence of death is imposed." 18 U.S.C. § 3559(e). The parties agree that Mr. Valder has been "convicted of a Federal sex offense" because the jury found him guilty on Counts One and Two. However, as discussed below, under the categorical approach used by the Second Circuit, Steven does not have a "prior sex conviction in which a minor was a victim."

18 U.S.C. § 3559(e) defines "prior sex conviction" as "a conviction for which the sentence was imposed before the conduct occurred constituting the subsequent Federal sex offense, and which was for a Federal sex offense or a State sex offense." 18 U.S.C. § 3559(e)(2)(C). "For a prior state conviction to qualify as a State sex offense, it must consist of conduct that would be a Federal sex offense if there were a basis for federal jurisdiction." *United States v. Kroll*, 918 F.3d 47, 51 (2d Cir. 2019) (cleaned up). A "Federal sex offense" for the purposes of § 3559(e) means a violation of one of nine enumerated statutes.[5] 18 U.S.C. § 3559(e)(2)(A).

The Second Circuit employs a categorical approach, rather than a conduct-specific approach, to determine whether an earlier offense qualifies as a "prior sex conviction" under 18

---

[4] The defense filed a pretrial motion regarding this issue. (Dkt. No. 23.) The government filed its response on March 18, 2024. (Dkt. No. 35.) Under Local Rule 12.1(a), the defense's reply brief was due on March 25, 2024. However, before the defense could file its reply, Judge Hurd denied the motion without prejudice via a one-sentence text order on March 21, 2024. (Dkt. No. 36.)

[5] 18 U.S.C. § 1591 (relating to sex trafficking of children), 18 U.S.C. § 2241 (relating to aggravated sexual abuse), 18 U.S.C. § 2242 (relating to sexual abuse), 18 U.S.C. § 2244(a)(1) (relating to abusive sexual contact), 18 U.S.C. § 2245 (relating to sexual abuse resulting in death), 18 U.S.C. § 2251 (relating to sexual exploitation of children), 18 U.S.C. § 2251A (relating to selling or buying of children), 18 U.S.C. § 2422(b) (relating to coercion and enticement of a minor into prostitution), or 18 U.S.C §2423(a) (relating to transportation of minors).

U.S.C. § 3559(e). *United States v. Kroll*, 918 F.3d 47, 54 (2d Cir. 2019) ("*Rood's* application of the categorical approach to § 3559(e) remains binding on us, and for good reasons."); *United States v. Rood*, 679 F.3d 95 (2d Cir. 2012) (abrogated on other grounds by *Descamps v. United States*, 570 U.S. 254 (2013)).  Under the categorical approach, the court determines whether the "state conviction meets the elements of the applicable federal generic offense," looking "only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *United States v. Ragonese*, 47 F.4th 106, 110 (2d Cir. 2022) (cleaned up, emphasis in original). In other words, under the categorical approach, the facts underlying the defendant's previous conviction are irrelevant. *See Kroll*, 918 F.3d at 51-55. Rather, the court must compare the elements of the state offense to the elements of the enumerated federal offense to which it is most comparable. *Id*. Under the categorical approach, if the state statute "punishes activity that the federal statute does not encompass, then the state crime cannot count as a predicate offense." *Kroll*, 918 F.3d at 52 (cleaned up).

Steven was previously convicted of violating New York Penal Law § 130.50(1). (Dkt. No. 11.) Under that law, "[a] person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person by forcible compulsion." "Forcible compulsion" means "to compel by either use of physical force" or "a threat, express or implied, which places a person in fear of immediate death or physical injury to himself, herself or another person, or in fear that he, she or another person will immediately be kidnapped." N.Y. Penal Law § 130.00(8).

Under the categorical approach, Mr. Valder's conviction does not qualify as a "a prior sex conviction in which a minor was the victim because New York Penal Law § 130.50(1) does not require the victim to be a minor. The offense can be committed against a person of any age. This distinguishes New York Penal Law § 130.50(1) from §§ 130.50(3) and (4), which both

contain age requirements.[6] A court applying the categorical approach to offenses under §§ 130.50(3) or (4) can conclude that "a minor was the victim" because the elements of the crimes require the victim to be a minor. Section 130.50(1), however, contains no such element. Thus, because the categorical approach forbids this Court from looking beyond the elements of Steven's previous offense, his earlier conviction does not qualify as a "prior sex conviction in which a minor was a victim."

The government argues that the Court can look beyond the elements of Steven's previous conviction under a "hybrid approach" endorsed by the Ninth Circuit in *United States v. Doss*, 630 F.3d 1181, 1196 (9th Cir. 2011). (Dkt. No. 35 at 8-10.) Under the government's proposed approach, this Court is faced not with one single question—whether Steven has a "prior sex conviction in which a minor was a victim"—but rather two questions: (1) whether Steven has a "prior sex conviction;" *and* (2) whether a minor was the victim of that sex offense. *Id*. at 5. The government argues that the "first question"— whether Steven has a "prior sex conviction" —is governed by the categorical approach. But the government argues that the "second question"— whether the conviction involved a minor victim—is decided on the basis of the specific circumstances underlying Steven's previous conviction. It appears that the Ninth Circuit is the only circuit that has adopted that approach. That approach has never been adopted by the Second Circuit. Indeed, the Second Circuit has previously declined the government's invitation to adopt the Ninth Circuit's approach. *Kroll*, 918 F.3d at 54 n.6. Therefore, this Court should reject the government's request to adopt the Ninth Circuit's hybrid approach in this case.

---

[6] . In order for a defendant to be found guilty of violating § 130.50(3), the victim must be "less than eleven years old." N.Y. Penal Law § 130.50(3). In order for a defendant to be found guilty of violating § 130.50(4), the defendant must be eighteen years old or older and the victim must be "less than thirteen years old." N.Y. Penal Law § 130.50(4).

Second Circuit precedent is clear: for the purposes of 18 U.S.C. § 3559(e), if the state statute under which the defendant was previously convicted "punishes activity that the federal statute does not encompass, then the state crime cannot count as a predicate offense." *Kroll*, 918 F.3d at 52 (cleaned up). The state statute under which Steven was convicted does not require that the victim be a minor. Accordingly, his prior conviction does not qualify as a "prior sex conviction in which a minor was the victim." Therefore, there is not a mandatory life sentence in this case.

## IV. THE FACTORS LISTED IN 18 U.S.C. § 3553(a) WEIGH IN FAVOR OF A THIRTY-FIVE YEAR SENTENCE OF IMPRISONMENT.

In determining a sentence, a court must consider the statutory concerns listed in 18 U.S.C. § 3553(a). Those factors include: (1) the history and characteristics of the defendant; (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; and (B) afford adequate deterrence to criminal conduct; and (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. §3553(a). Here, these factors weigh in favor of imposing a sentence of thirty-five years imprisonment.

Steven's history and characteristics weigh in favor of a sentence of thirty-five years. Steven was himself the victim of horrific sexual abuse at the hands of his own father and another authority figure. There is no question that this abuse occurred as his father was convicted of the offense and was sentenced to prison (Dkt. No. 82 ¶ 111.) Moreover, Steven's father knew he had mental health issues and abused him anyway. He was sexualized at a very young age and has struggled during his entire life to recover from that trauma. (Dkt. No. 82 ¶ 118.) He was in therapy from the ages of five until he was eighteen years old. *(Id).* He struggled in school with a learning disability, ADHD, depression and various emotional problems. (PSR ¶ 115.) His mental health issues required him to be placed on the medications Ritalin and Zoloft and he

received social security disability until he was 18 years old. (PSR ¶¶115-116). Significantly, his prior offense occurred when he was between the ages of 16 and 18 years old. *Id*. ¶ 97.

Steven's own history of abuse does not excuse his actions, but that history does show that he is part of a tragic cycle of abuse. District courts commonly grant sentencing reductions where a defendant was victimized as a child. *See, e.g.*, *United States v. McBride*, 511 F.3d 1293 (11th Cir. 2007); *United States v. Patzer*, 548 F. Supp. 2d 612 (N.D. Ill. 2008); *United States v. Somerstein*, 20 F. Supp. 2d 454 (E.D.N.Y. 1998); *United States v. Ayers*, 971 F. Supp. 1197 (N.D. Ill. 1997). Therefore, this factor weighs in favor of a sentence of thirty-five years.

Steven went to jail when he was only 18 years. He was released when he was 32 years old, and he was overwhelmed. He struggled mentally and was "nervous to enter society." (See Character Letter, filed separately). Notwithstanding his issues, he worked, was able to secure his own apartment and learned how to be independent. *(Id)*. He has the support of his family. Steven has suffered incredible trauma, and he needs help, not a life sentence.

Another factor the Court must consider is the need for the sentence imposed to promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct. A sentence of thirty-five years would meet these needs. A thirty-five-year sentence is a severe sanction. It is not a slap on the wrist. It would promote respect for the law and provide just punishment. Moreover, a thirty-five-year sentence would deter criminal conduct. Studies of the deterrent effect of prison sentences have found that it is the prosecution of crime, rather than the sentence imposed, that has the strongest deterrent effect. In one of the best studies of specific deterrence, no difference in deterrence was found between probation and imprisonment. Another study by the Institute of Criminology at Cambridge University examined the effects of changes to both the *certainty* and the *severity* of punishment. While significant correlations were found between the certainty of punishment and crime rates, the "correlations

between sentence severity and crime rates . . . were not sufficient to achieve statistical significance." *See* David Weisburd et. al., *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995). Therefore, this factor weighs in favor of a sentence of thirty-five years.

Finally, the need to avoid sentencing disparities weighs in favor of a sentence of thirty-five years. According to data compiled by the United States Sentencing Commission, the average length of sentence imposed on defendants similarly situated to Steven is 413 months (34.41 years) and the median sentence imposed on defendants similarly situated to Steven is 470 months (39.16 years). (Dkt. No. 82 ¶ 150.) Therefore, this factor weighs in favor of a sentence of thirty-five years.

## V.      THE COURT SHOULD IMPOSE A SENTENCE OF THIRTY-FIVE YEARS BECAUSE GUIDELINES §§ 2G2.1 AND 2G2.2 OVERSTATE OFFENDERS' CULPABILITY.

The Guideline sentencing range in this case is based on Sentencing Guidelines 2G2.1 and 2G2.2. (Dkt. No. 82 ¶¶ 60-86.) Many of the sentencing enhancements set forth in those Guidelines have been rejected by federal courts. Under normal circumstances, the Sentencing Commission bases its determinations on empirical data.  *Kimbrough v. United States*, 552 U.S. 85, 109 (2007); *see also Gall v. United States*, 552 U.S. 38, 46 (2007) (noting that even though the Guidelines are advisory rather than mandatory, they are [mostly] … the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.") However, the child pornography Guidelines were not adopted under normal circumstances. Rather, they were politically dictated by Congress and are contradicted by empirical evidence.

When Guidelines are not based on an empirical approach, but are instead guided by statutory directives, a court is not presented with the ordinary case in which the Commission's

recommendation of a sentencing range will reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. *See e.g.*, *Kimbrough*, 552 U.S. at 109 (quoting *Rita*, 551 U.S. at 350); *see also Gall*, 552 U.S. at 46 n.2 (noting that not all Guidelines are tied to empirical evidence). In these cases, it is not an abuse of discretion for a District Court to conclude when sentencing a particular defendant that application of the Guideline yields a sentence greater than necessary to achieve § 3553(a)'s purposes in a mine-run case. *Kimbrough*, 552 U.S. at 109.

In 2013, the Sentencing Commission published a report on the child pornography Guidelines. *See U.S. Sent'g Comm'n, Report to the Congress: Federal Child Pornography Offenses (2012)* ("C.P. Report"). In its report, the Commission stated, "the existing sentencing scheme in non-production cases no longer adequately distinguishes among offenders based on their degrees of culpability." C.P. Report at ii.[7]

In *United States v. Dorvee*, a defendant pled guilty to distribution of child pornography and sentenced to a term of 240 months, the statutory maximum. *United States v. Dorvee*, 616 F.3d 174, 178 (2d Cir. 2010). The sentencing court appeared to be "convinced that [the defendant] was a 'pedophile' likely to engage in sexual conduct with a minor." *Id*. at 183. In vacating the sentence, the Second Circuit found and identified "certain serious flaws" in § 2G2.2. *Id*. at 182; *see also United States v. Jenkins,* 854 F.3d 181, 188 (2d Cir. 2017). Specifically, the Court found that applying enhancements that are inherent to the crime and, consequently, apply to the vast majority of defendants, such as § 2G2.2 enhancements, "eviscerates the fundamental statutory requirement in § 3553(a)." *Id*. at 187. *Dorvee* encouraged district judges to recognize their broad discretion to sentence below the levels suggested by § 2G2.2, calling it an eccentric guideline of highly unusual

---

[7] As a result of recent changes in internet technology "four of the six sentencing enhancements in § 2G2.2, those relating to computer usage and the type and volume of images possessed by offenders, which together account for 10 offense levels, now apply to most offenders and, thus, fail to differentiate among offenders in terms of their culpability." *C.P. Report at iii.*

provenance, which, unless carefully applied, can easily generate unreasonable results. *Id*. at 188. Similarly, in *United States v. Tutty*, the Second Circuit reversed a sentence that followed § 2G2.2 enhancements resulting in a sentence of 168 months for a first-time offender. *United States v. Tutty*, 612 F.3d 128, 129-130 (2d Cir. 2010). The Second Circuit held that the district court failed to recognize its authority to sentence below the Guideline range based on the policy considerations. *Id*. at 129. Accordingly, this Court should acknowledge the flaws in the applicable Guideline by imposing a below-Guideline sentence of thirty-five years. Courts in this District have recently acknowledged these flaws in imposing a just sentence.

## VI.    THE VULNERABLE VICTIM ENHANCEMENT DOES NOT APPLY.

The PSR applies a two-level enhancement under Guideline § 3A1.1(b)(1). (Dkt. No. 82 ¶ 63.) That enhancement applies where "the defendant knew or should have known that a victim of the offense was a vulnerable victim." That enhancement does not apply here. The application notes to Guideline § 3A1.1(b)(1) state that the enhancement should not be applied where "the factor that makes the person a vulnerable victim is incorporated in the offense guideline." The evidence does not support a finding that Steven knew or should have known about any vulnerability other than the age of MV1 and MV2, which is already incorporated in the offense guideline. There is no indication that Steven knew or should have known that the boys ran away from home at times, that they were not supervised at home, that they used marijuana when he was not with them, or that MV2 had a learning disability. Of particular note, the facts recounted in Paragraph 46 of the PSR indicate that the mother of MV1 and MV2 confronted Steven in Rite-Aid. This would not have left him with the impression that the boys were neglected or unsupervised. Therefore, the defense requests that this enhancement not be applied.

**VII.    THE APPLICATION OF THE TWO-POINT ENHANCMENT UNDER GUIDELINE § 2G2.1(b)(2)(A) AND THE APPLICATION OF THE FOUR-POINT ENHANCMENT UNDER GUIDELINE § 2G2.1(b)(4)(A) CONSTITUTES IMPERMISSIBLE DOUBLE COUNTING.**

The PSR applies a two-point enhancement under Guideline § 2G2.1(b)(2)(A) for offense involving the commission of a sexual act and a four-point enhancement under Guideline § 2G2.1(b)(4)(A) for material involving sadistic or masochistic conduct. (Dkt. No. 82 ¶¶ 69-70.) The PSR cites the insertion of a thermometer into MV1's anus as the trigger for both enhancements. This constitutes impermissible double counting. Therefore, the defense requests that the Court decline to apply one of these enhancements.

**VIII.    CONCLUSION**

For the reasons discussed above, the defense respectfully requests that the Court impose a sentence of thirty-five years of imprisonment.

DATED: October 3, 2024                           LISA A. PEEBLES
                                                 FEDERAL PUBLIC DEFENDER
                                        By:      */s/ Courtenay K. McKeon, Esq.*
                                                 Assistant Federal Public Defender
                                                 Bar Roll No. 515841
                                                 Clinton Exchange, 3rd Floor
                                                 4 Clinton Street
                                                 Syracuse, New York 13202
                                                 (315) 701-0080

To:    Lisa M. Fletcher, AUSA (by ECF)
       Angela Bennett, SUSPO (by email)
       Steven Valder (by mail)